Elmira Rolling Mill Co. *v.* Erie Railway Co.

## ELMIRA ROLLING MILL COMPANY

### *v.*

### ERIE RAILWAY COMPANY.

For a consideration graduated by the amount of business done, the E. R. Co. granted to the N. J. M. R. Co. necessary terminal facilities for passengers, baggage, mail and express goods, at the passenger station of the E. R. Co. at N. Y. and J. C., &c., and the right to use its turn-tables, yards, depots, and engine-houses at L. D., and agreed to furnish suitable offices for the local agents and clerks of the N. J. M. Co. at C. street, in N. Y., *Held,* that the expenses incident to furnishing the facilities stipulated for, were to be borne entirely by the E. R. Co.

On petition and answer.

*Mr. C. Parker,* for the receiver of the Erie Railway Company.

Elmira Rolling Mill Co. v. Erie Railway Co.

*Mr. John J. McCook*, for the receiver of the New Jersey and New York Railway Company.

THE CHANCELLOR.

By an agreement made on the 9th of September, 1874, between the Erie Railway Company and the New Jersey and New York Railway Company, it was agreed that for the consideration, among other things, of the tolls thereby agreed to be paid to the former company by the latter, the Erie Company would grant to the New Jersey Company the right to use the two miles of the track of the Erie Company between Nannet Junction and Spring Valley Junction, and the seven miles of its track between Erie, Hackensack Junction and Long Dock, together with necessary terminal facilities for passengers, baggage, mail and express goods at the passenger stations of the Erie Company at New York and Jersey City, and freight at Long Dock, Jersey City, and at Chambers street, New York, and all other stations in New York where the Erie Company then received or delivered local freight, or at any other termini thereafter established in New York in lieu thereof by the Erie Company; and further, would permit the New Jersey Company to use its turn-tables, yards, depots and engine-houses at Long Dock, and furnish suitable offices for the local agents and clerks of the New Jersey Company, at Chambers street, New York, or at stations in New York where local freight was received or delivered by the Erie Company for its own line and for its superintendent at Long Dock; subject, however, to such rules and regulations concerning the movement of trains and the enjoyment of the privileges thereof granted, both in manner and extent, as the Erie Company might, from time to time, prescribe; such rules and regulations to apply to all trains of the same grade of each party, so as to secure equal and like facilities to the trains of both parties. A question has arisen as to the construction of the above clause, granting what are there called " terminal facilities; " the receiver of Erie Company insist-

ing that the New Jersey Company (each company is now represented by its receiver or receivers) is bound to pay a due proportion of the salaries of the persons employed by the Erie Company at the depot where the terminal facilities are afforded, in providing those facilities; while the receivers of the New Jersey Company, on the other hand, deny the existence of such liability. The charges are for a proportion of the salaries of depot-master, usher, train-master, doormen, baggagemen, janitors, switchmen, agent, clerk, telegraph operator at Spring Valley, ticket agents at New York and Jersey City, baggagemen at New York, and wages of engineers and firemen in switching at Jersey City, and for one-half of the expense of the water station at Spring Valley.

It is quite clear that in the absence of an express agreement to do so, the New Jersey Company would not be liable, under the provision under consideration, to pay any part of the salaries and wages in question, where the services are such as are rendered by the employes of the Erie Company in taking charge of or policing the stations or station-houses, switching or attending the switches, or telegraphing. For a consideration graduated by the amount of business done, the Erie Company granted to the New Jersey Company necessary terminal facilities for passengers, baggage, mail and express goods at the passenger station of the Erie Company at New York and Jersey City, &c., &c., and the right to use its turn-tables, yards, depot and engine-houses at Long Dock, and agreed to furnish suitable offices for the local agents and clerks of the New Jersey Company, at Chambers street, in New York, &c. The expenses incident to furnishing the facilities thus stipulated for, are to be paid by the Erie Company. The New Jersey Company is not bound to bear any of them. That such was the understanding of the parties to the agreement is manifest from the provision made in the eleventh section of the agreement against liability on the part of the Erie Company for loss, detriment or damage by fire or otherwise happening to the locomotives, or cars or

fixtures of the New Jersey Company while in the houses, yards, sheds or depots of the Erie Company, in pursuance of the agreement. That immunity is claimed and accorded expressly in consideration of the "free use" thereby granted by the Erie Company of its car-sheds, engine-houses, depots, turn-tables, &c., at Jersey City, for the passenger, baggage and mail cars of the New Jersey Company.

The Erie Company, under the agreement, is not bound to furnish ushers for the New Jersey Company.

By the agreement, the Erie Company granted to the New Jersey Company the right to take from the tanks and other water facilities of the Erie Company, all the water it might require for the use of its engines and cars, and the price is fixed. It is to be the rates charged for the water by the Jersey City Water Company during the same period. In the absence of any agreement as to the water furnished at Spring Valley, a reasonable price for the water taken should be paid. If the parties cannot agree as to this price, it will be fixed by a reference.